UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSEPH W. FINCH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO:  1:08-cv-0432-DML-RLY |
| | ) | |
| CITY OF INDIANAPOLIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## Order on Plaintiffs' Motion to Compel Discovery (Dkt. 114)

This matter came before the court on the plaintiffs' motion to compel each of the

individual defendants (1) to answer an interrogatory as to his or her net worth and identify any

documents relied on to answer the interrogatory, and (2) to produce the identified net worth

documents and produce his or her state and federal income tax returns, with attachments, from

2005 to the present.  (Dkt. 114).  The plaintiffs contend that this discovery is relevant to their

punitive damages claims against the individual defendants and that there is no basis for

restricting or delaying that discovery.  The central objection by the individual defendants (and

the basis of their request for a protective order) is that the discovery is premature—at least until

the court determines whether the plaintiffs can survive summary judgment on liability based on a

qualified immunity defense.  The individual defendants also contend that delaying the discovery

is appropriate because the discovery seeks sensitive, private information.

The individual defendants have asked the court for leave to file a sur-reply brief (Dkt.

128), and the plaintiffs object.  Their sur-reply responds to the argument made by the

plaintiffs in their reply brief that the issue of qualified immunity decided by the court on the

defendants' motion for judgment on the pleadings is "law of the case."  The court finds that the

proposed sur-reply properly is confined to addressing a legal argument raised for the first time in the plaintiffs' reply brief.  The court therefore GRANTS the individual defendants' motion (Dkt. 128) for leave to file their sur-reply brief.  And for the reasons explained below, the court DENIES the plaintiffs' motion to compel (Dkt. 114).

## Background

The plaintiffs—Joseph W. Finch, David E. Hensley, and Peter W. Mungovan—are Caucasian Indianapolis police officers who allege that they were passed over for promotion from Lieutenant to Captain in December 2006 in favor of the promotion of African-American lieutenants who were less qualified and ranked behind the plaintiffs on the eligibility list used for the December 2006 promotions.  According to the complaint, in December 2006, the City of Indianapolis promoted 11 police lieutenants to the rank of captain.  The first seven promotions were of the lieutenants ranked one through seven on the eligibility list. (Dkt. 1, ¶ 20).  The plaintiffs occupied the next three spots, with Mr. Hensley ranked eighth, Mr. Finch ninth, and Mr. Mungovan tenth, but they were not promoted.  Instead, three African-American lieutenants ranked 12th, 17th, and 26th, respectively, were given promotions.  (*Id.*).

The plaintiffs have sued their employer—the City of Indianapolis—for race discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1981 and 1983.  And (relevant to the discovery dispute at issue here) the plaintiffs have sued the individual defendants under 42 U.S.C. § 1983 alleging that, acting in their individual capacities and under color of law, they violated the plaintiffs' federal constitutional and statutory rights to equal protection under the law and to be free from racial discrimination in the terms and conditions of their employment.  The individual defendants are:

- Barton R. Peterson, who is alleged to have used his position as Mayor of the City of Indianapolis and as a member of the Transition Authority (a City agency that was

2

established to oversee the consolidation of the Indianapolis Police Department and the Marion County Sheriff's Department into the Indianapolis Metropolitan Police Department ("IMPD") to deprive the plaintiffs of their federal rights;

- Monroe Gray Jr., alleged to have used his position as a member of the Transition Authority to deprive the plaintiffs of their federal rights;

- Frank J. Anderson, alleged to have used his position as a member of the Transition Authority and as the Marion County Sheriff to deprive the plaintiffs of their federal rights;

- Michael T. Spears, alleged to have used his position as the Chief of the IMPD to deprive the plaintiffs of their federal rights; and

- Cordelia L. Burks, Mary Maxwell, and Joseph L. Smith., Jr., alleged to have used their positions as members of the police Merit Board to deprive the plaintiffs of their federal rights and who, as members of the Merit Board, voted to approve the December 2006 promotions.

For most of its history, this litigation has focused on whether all defendants were entitled to judgment on the pleadings, in part—as to the individual defendants—based on qualified immunity. The defendants' qualified immunity argument was grounded in the terms of a 1978 Consent Decree, a document that was considered by the court without reference to any other matters outside the pleadings. (Dkt. 76 at p. 3). The court denied the motion for judgment on the pleadings (Dkt. 76) and its decision was affirmed on appeal. *See Finch v. Peterson,* 622 F.3d 725 (7th Cir. 2010). Discovery was stayed pending the court's ruling on the motion for judgment on the pleadings (Dkt. 74) and pending the appeal (Dkt. 96). Merits discovery began in earnest after the Seventh Circuit's decision. The deadline for filing dispositive motions is August 1, 2011. (Dkt. 106).

## Discovery Requests at Issue

The issue before the court is whether each of the individual defendants must provide the following information and documents to the plaintiffs:

Interrogatory:  Provide your net worth and provide and identify each document relied on to answer this interrogatory. [1]

Document Request:  All documents identified or relied on in your answers to [the interrogatories served on you].

Document Request:  Your complete state and federal income tax returns, with attachments from 2005 to the present.

## Analysis

**A.**     **"Law of the case" principles do not negate the defendants' objections to providing the requested discovery.**

The court will address as a preliminary matter an argument the plaintiffs have made in

their reply brief.  In response to the defendants' contention that they should not be subject to

discovery of their individual financial information so long as they have qualified immunity

defenses, the plaintiffs maintain that it is the "law of the case" that the defendants are not entitled

to qualified immunity.  That doctrine has no application to this discovery dispute.

In seeking judgment on the pleadings, the defendants argued that the Consent Decree

required them to consider race in decisions on promotions to the rank of captain, that they

therefore could not have reasonably known that their promotions decisions were

unconstitutional, and that they are thus entitled to qualified immunity.  The court ruled that the

language of the Consent Decree itself did not require race-based decision making in the

promotions process and that the pleadings therefore did not compel the conclusion that the

individual defendants met the standard for qualified immunity.  (Dkt. 76 at p. 13).  The court

expressly left to another day whether the defendants may be entitled to qualified immunity based

on a complete factual record (in contrast to the limited matters the court could consider under

---

[1]      Each individual defendant has been asked the "net worth" interrogatory and the relevant document requests, although the language used is not always identical from one defendant to another.  *See, e.g.,* Dkt. 114-1 at p. (interrogatories directed to defendant Peterson) and Dkt. 114-2 (interrogatories directed to defendant Gray).

rule 12).  (*Id.* at p. 11, 12).  In particular, the court has not had occasion to consider any other evidence the defendants say they will offer on qualified immunity issues.  (*See id.* at p. 8).

Contrary to the plaintiffs' argument on the current discovery issue, the court's order denying the defendants' motion for judgment on the pleadings and the Seventh Circuit's affirmance of that order is not the "law of the case" because it is not a final disposition of all qualified immunity issues. The ruling that the Consent Decree did not by its terms require the defendants to remedy past discrimination by affirmative promotion of African-American lieutenants to the captain rank over Caucasian lieutenants does not prevent the individual defendants from seeking summary judgment on the issue of qualified immunity based on evidence not considered at the pleadings stage.

**B.      The requested information is relevant.**

There is no question, and the defendants do not dispute, that a claim for punitive damages (which is made against each individual defendant) makes a defendant's personal wealth relevant. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 269-70 (1981) (punitive damages in a section 1983 case against a state official, "based on his personal financial resources," may in appropriate case serve a deterrent aim of section 1983).

And there is no question that punitive damages are an available form of relief under certain circumstances (but not against a municipality) for a successful section 1983 claim.  *See City of Newport,* 453 U.S. 247 (1981) (municipality may not be held liable for punitive damages under section 1983); *Smith v. Wade,* 461 U.S. 30, 56 (1983) ("a jury may be permitted to assess punitive damages [against individual defendants] in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); *Alexander v. City of Milwaukee,* 474 F.3d 437, 453-54 (7th Cir. 2007) (evidence at trial, viewed most favorably to the plaintiffs,

5

allowed jury to find that the individual defendants had been recklessly or callously indifferent to the plaintiffs' federally protected rights, but remand was required because jury had not been clearly instructed to take account of each defendant's actions and their wrongfulness in deciding a punitive award proportional to the reprehensibility of the defendant's actions); *Soderbeck v. Burnett County, Wisconsin,* 752 F.2d 285, 291 (7th Cir. 1985) ("The words used to mark off the domain of punitive damages [maliciously, wantonly, oppressively, spitefully] indicate that punitive damages [in section 1983 cases] . . . are reserved for cases where the wrongfulness of the defendant's conduct is conspicuous, implying that its wrongfulness is apparent to the person who engages in it, and not just to a lawyer").

**C.      The relevance of the information must be balanced with additional legitimate concerns.**

According to the plaintiffs, the fact that their discovery requests seek information relevant to a claim in the case should end the court's inquiry. They further maintain that "the vast majority of federal courts" do not limit the timing of discovery of financial information where claims for punitive damages have been made, and that they are willing to consider a protective order that limits the *public* dissemination of the information to protect the defendants' privacy concerns.[2]

Though the scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad, the court has the obligation to limit discovery if it determines that the burden or expense to comply outweighs its likely benefit "considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). The court also may, on good cause

---

[2]      The plaintiffs apparently are willing to limit wholesale public disclosure, but want the ability to share the requested financial information with anyone involved in the litigation, including the individual plaintiffs.

shown, forbid discovery or stage its production to protect a party from "annoyance,

embarrassment, [or] oppression." Fed. R. Civ. P. 26(c)(1)(A)-(B). Discovery aimed at an

opponent's personal finances is a quick route to the underside of the opponent's skin. *See Estate*

*of Lee ex rel. McGarrah v. Lee & Urbahns Co.,* 876 N.E.2d 361 (Ind. Ct. App. 2007):

> It seems self-evident that a person's personal financial records dating back five
> years . . . are something almost all persons would prefer to keep private. . . . [A]
> request for such records would be, for most, annoying and quite likely
> embarrassing, unduly burdensome, and expensive as well. We think that rare is
> the person, even one of clear conscience, who would unhesitatingly respond to
> such a request without being compelled, even with assurances of confidentiality.

*Id.* at 369.

The fact that a discovery request is annoying to the recipient is, of course, not a reason in

itself to deny the discovery. But the question here is whether the balancing of the Rule 26

factors militates in favor of requiring individual financial information to be provided *at this stage*

*of the case.*

**D.      It is not appropriate to permit discovery of the defendants' individual financial
information now.**

Having reviewed the parties' arguments and the pertinent authorities, the court

determines that the discovery of the individual defendants' financial information is

inappropriate at this time. First, the discovery should not proceed until the defendants' qualified

immunity defenses have been determined on a factual record. Second, the court believes it is

inappropriate to subject the individual defendants to this discovery on nothing more than the

plaintiffs' bare allegation they are entitled to punitive damages. Third, any inefficiencies caused

by delaying this discovery are outweighed by the interests served in delaying it.

1. **Limits on discovery of the defendants' finances are appropriate pending determination of qualified immunity defenses.**

The plaintiffs assert that "the vast majority of federal courts" do not permit defendants to delay punitive damages discovery. But the decisions on which the plaintiffs rely do not carry the weight the plaintiffs have loaded upon them. None of those courts required government officials sued under section 1983 to provide personal financial information, let alone years' worth of tax returns or documents verifying their net worth, and these decisions do not address limitations on damages discovery pending a merits determination of the qualified immunity defense.

Federal courts routinely place limits on discovery pending adjudication of a qualified immunity defense. In *Landstrom v. Illinois Dept. of Children and Family Services,* 892 F.2d 670 (7th Cir. 1990), the Seventh Circuit affirmed the district court's order staying discovery pending its decision whether to dismiss individual capacity claims against the individual government defendants based on qualified immunity. *Id.* at 674. The rationale given most often for limiting discovery is to allow a government official to devote her time to her government work rather than attending to litigation. *Id.; see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1953-1954 (2009). The qualified immunity doctrine also serves the public's interest that well-qualified people agree to serve in government positions. *See Mitchell v. Forsyth,* 472 U.S. 511, 525 (1985) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)) (Qualified immunity shields officials from the costs of "distraction from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.")

Even though some of the individual defendants may not currently hold government positions, a core purpose of the qualified immunity doctrine is furthered by limiting discovery pending adjudication of a qualified immunity defense. Limiting or delaying discovery into personal finances is particularly appropriate. Many people would be deterred from serving in

the public sector if a litigant could pry into their personal financial affairs without the court at least first adjudicating pretrial dispositive motions based on qualified immunity.

Discovery necessary to adjudicate a qualified immunity defense is, of course, permitted. *See Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987) (where qualified immunity cannot be decided on the pleadings but may be decided on summary judgment and discovery is necessary regarding the actions taken by the officials in order to resolve a motion, "any such discovery should be tailored specifically to the question of [the official's] qualified immunity"). And the individual defendants do not suggest that there is any difference in this case between merits discovery generally and discovery relevant to qualified immunity, so the court has not, after the lifting of the stay, imposed any limits on the plaintiffs' merits discovery. Damages discovery is different. The court finds that the purposes of the qualified immunity doctrine are served by precluding the financial discovery the plaintiffs seek at least until after dispositive motions are adjudicated. The court realizes, of course, that dispositive motions are not currently pending, but the defendants have stated their intention to file a summary judgment motion (*see, e.g.,* Dkt. 106, the case management order), and the deadline for filing a summary judgment motion is quickly approaching.

### 2. Discovery of the defendants' financial information should not go forward on nothing more than a bare claimed entitlement to punitive damages.

The plaintiffs' claim for punitive damages against the individual defendants is based, so far, only on the allegations of their complaint. Those allegations are conclusory and give the court no basis from which to infer that the plaintiffs will be able to show that any defendant acted with the required mens rea. For defendants Peterson, Gray, and Anderson, the plaintiffs allege that "upon [unspecified] information and belief" the defendant "expressly directed that less qualified black candidates be promoted" to captain over the plaintiffs who were more qualified

and at a better ranking on the eligibility list. (Dkt. 1, ¶¶ 24, 25, 26). This same allegation is made as to defendant Spears, and even though the "information and belief" qualification is missing, the complaint still does not provide any factual basis of the what, when, how, or why of his alleged directive to promote less qualified African-American candidates. (*Id.,* ¶ 27). For defendants Burks, Maxwell, and Smith, they are alleged to have voted to approve the promotions of African-American officers who had a lower ranking on the eligibility list than the plaintiffs, but nothing more illuminates the what, when, how, or why of their conduct. (*Id.,* ¶ 28).

Punitive damages are not *ipso facto* available in a section 1983 racial discrimination case, even if the individual defendants ultimately are found liable for compensatory damages. Conduct that may prove a section 1983 claim and may suffice to defeat summary judgment on qualified immunity will often still fall short of the nature of conduct necessary to support a punitive damages award. Punitive damages may be awarded only if the plaintiffs establish that the individual defendants' conduct was motivated by "evil" intent, or was "reckless" or callous and where its wrongfulness was "apparent to the person who engage[d] in it, and not just to a lawyer." *See Smith v Wade,* 461 U.S. at 56; *Alexander v. City of Milwaukee,* 474 F.3d at 453-54; *Soderback v Burnett County, Wisconsin,* 752 F.2d at 291.

Even in punitive damages cases that do not involve public officials or qualified immunity defenses, many courts have at least required the plaintiff to show some facts that support the claim. *See United States v. Autumn Ridge Condominium Ass'n, Inc.,* 265 F.R.D. 323, 326 (N.D. Ind. 2009) (finding that the facts alleged in the complaint, if true, "may support an award of punitive damages"); *EEOC v. Environmental & Demolition Servs, Inc.,* 246 F.R.D. 247, 250 (D. Md. 2007) (the EEOC's complaint "sets out specific facts, which if believed, could constitute malicious and reckless conduct entitling plaintiff to punitive damages"); *Chenoweth v. Schaaf,*

98 F.R.D. 587, 589 (W.D. Pa. 1983) (declining to allow discovery of the defendant's private

financial information when plaintiff's mere allegation that the defendant's conduct had been

"careless, reckless, wanton, and grossly negligent" did not suggest a "real possibility" that

punitive damages will be an issue).

No evidence consistent with the very steep punitive damages standard has been presented

thus far in this case. When weighed against the limitations on discovery against public officials

in section 1983 cases and the breadth of the private, financial information sought by the

plaintiffs, the court is persuaded for this reason as well that the plaintiffs' discovery is

inappropriate at this stage of the case. If requested, the court will revisit the issue after the ruling

on summary judgment issues and upon some demonstration of the factual bases for the plaintiffs'

allegation that the defendants' conduct would support an award of punitive damages.[3]

---

[3]    Moreover, in that event the court will expect the parties to address specifically the
quantum and nature of financial information appropriate to the punitive damages claims in this
case. For example, but without taking a position on the scope of financial discovery that will be
permitted, the court notes that in *United States. v. Autumn Ridge Condominium Ass'n, Inc.,* 265
F.R.D. 323, 328-29 (N.D. Ind. 2009), Magistrate Judge Cherry limited the temporal scope of
financial information discoverable from an individual alleged to have engaged in discrimination
in violation of the Fair Housing Act to that necessary to show "current financial status." Other
courts have required only an affidavit from the defendant attesting to a form of personal balance
sheet. *Hazeldine v. Beverage Media, Ltd.,* 1997 WL 362229 at *4 (S.D.N.Y. June 27, 1997)
(individual defendant's privacy interests in financial information outweighed the plaintiff's need
for all of the financial information requested; defendant required to produce only a "financial
affidavit in the form of a personal balance sheet"); *Collens v. City of New York,* 222 F.R.D. 249,
254 (S.D.N.Y. 2004) ("efficient" means for police officer defendant in civil rights case to
provide financial discovery was for her to "swear to an affidavit declaring her net worth").

**3.    The purported inefficiencies of delaying discovery of financial information do not outweigh the factors in favor of staging this discovery.**

The plaintiffs point out that if they do not get the defendants' financial information before they must take the defendants' depositions on qualified immunity and liability issues, then they may have to depose the defendants again.  The court finds that this potential inefficiency does not outweigh the concerns the court has about requiring the individual defendants to provide this information now.  As discussed above, this discovery is relevant solely to a damages claim that the plaintiffs will have only if they clear the hurdles of qualified immunity, of liability under section 1983, and of entitlement to punitive damages according to a very demanding evidentiary standard.  The inconvenience of convening a second deposition on issues limited to financial information is slight in comparison.[4]

## Conclusion

For the foregoing reasons, the court DENIES the plaintiffs' motion to compel (Dkt. 114).  The defendants' motion to file a sur-reply (Dkt. 128) is GRANTED and shall be docketed by the clerk.

So ORDERED.


Date: ___06/23/2011___                          *Debra McVicker Lynch*
                                                 Debra McVicker Lynch
                                                 United States Magistrate Judge
                                                 Southern District of Indiana

---

[4]     And the court notes that it is usually the party facing a second deposition who complains, and the defendants here have not suggested they would object in this event.  Moreover, as the court explained at note 3 *supra*, it is not certain that the court would require the defendants to provide deposition testimony on their financial status even if it permitted discovery directed to financial matters.

Distribution:

Gary P. Goodin
GOODIN ORZESKE & BLACKWELL, P.C
ggoodin@goblaw.com

Jennifer Lynn Haley
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jhaley@indy.gov

John D. Meyer
GOODIN ORZESKE & BLACKWELL, P.C
jmeyer@goblaw.com

Donald G. Orzeske
GOODIN ORZESKE & BLACKWELL, P.C
dorzeske@goblaw.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org